**O**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# United States District Court
# Central District of California

| | |
|---|---|
| ANGELA KALDIS,<br><br>            Plaintiff,<br><br>   v.<br><br>WELLS FARGO BANK, N.A.; NAJLA RABADI; SARA MAJIDIAN; RITA EL HAGE; and DOES 1-100, inclusive,<br><br>            Defendants. | Case № 2:16-cv-06407-ODW- GJS<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND [9] AND DISMISSING INDIVIDUAL DEFENDANTS** |

## I.    INTRODUCTION

Plaintiff Angela Kaldis originally filed this action in Los Angeles Superior Court against Defendant Wells Fargo Bank, N.A. ("Wells Fargo") and individual Defendants Najla Rabadi, Sara Majidian, and Rita El Hage (collectively, "Individual Defendants"). (Compl., ECF No. 1, Ex. A.)  Wells Fargo timely removed the case based on diversity jurisdiction, claiming that complete diversity existed because the Individual Defendants were fraudulently joined.  (Notice of Removal ("NOR"), ECF No. 1.)  Plaintiff subsequently filed the present Motion for an Order to Remand to State Court.  (ECF No. 9.)

The Court finds that the Individual Defendants are fraudulently joined.  The Court therefore has subject-matter jurisdiction over this action, pursuant to 28 U.S.C.

§ 1332.  Thus, Plaintiff's Motion for Remand is **DENIED** and the Court dismisses Defendants Rabadi, Majidian, and El Hage from this action with prejudice.[1]  (ECF No. 9.)

## II.    FACTUAL BACKGROUND

Wells Fargo employed Kaldis as a Personal Banker for two separate terms of employment: the first from February 2013 until February 2014, and the second from March 2014 until October 2015.  (Compl. ¶¶ 11(a), 11(g), 11(h), 12(a).)  During the first period of employment, Rabadi was Kaldis' branch manager and Majidian was the branch's Service Manager.  (*Id.* ¶¶ 11(a), 11(c).)  Kaldis alleges that Rabadi verbally abused her regarding her weight and appearance, forced her to stay at work later than male employees, screamed at her, turned off her internet while she was helping a customer, and threatened to keep her from being promoted if Kaldis ever reported the abuse to Human Resources.  (*Id.* ¶¶ 11(a), 11(e).)

Kaldis was diagnosed with anxiety and depression in mid-2013.  (*Id.* ¶ 11(b).)  Thereafter, Rabadi observed prescription medication on Kaldis' desk and allegedly made offense statements such as "Angela is taking Xanax at her desk" and "Angela is on drugs."  (*Id.*)  Around that time, Majidian allegedly told Kaldis that she was slurring her words and asked her "What drugs are you on?  Do you need help?" during a meeting in which another employee was present.  (*Id.* ¶ 11(c).)

Near the end of 2013, Kaldis twice requested a transfer to a different Wells Fargo location, both of which she claims Rabadi blocked.  (*Id.* ¶¶ 11(e), 11(f).)  Kaldis eventually quit in February 2014 due to the allegedly hostile work environment at the branch.  (*Id.* ¶ 11(g).)  However, El Hage later recruited Kaldis back to Wells Fargo to work under her at a different branch.  (*Id.* ¶ 11(h).)  Kaldis claims that she soon experienced a hostile environment at the new branch as well, as Rabadi and El Hage

---

[1]   After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matters appropriate for decision without oral argument.  Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

became closer friends and El Hage began to single out Kaldis and question her work performance.  (*Id.* ¶ 11(i).)  Further, El Hage allegedly told Kaldis that her new branch manager would "always . . . promote the guys over you."  (*Id.*)  Kaldis claims that her lack of promotion after being sent to a licensing program—which resulted in the promotion of all the male employees that attended—shows that she was discriminated against for being a woman.  (*Id.*)

Kaldis eventually took a medical leave of absence in April 2015 due to depression she claims was related to her mistreatment at Wells Fargo.  (*Id.* ¶ 12(a).)  She was terminated in October 2015.  (*Id.*)  On July 22, 2016, Kaldis filed a Complaint in the Los Angeles Superior Court, in which she asserted sixteen causes of action.  (ECF No. 1, Ex. A.)  However, Kaldis pleaded only three of those causes of action against the Individual Defendants: disability harassment, harassment on the basis of taking leave under the California Family Rights Act ("CFRA"), and intentional infliction of emotional distress ("IIED").  (*Id.* ¶¶ 25–30, 61–66, 118–23.)  Wells Fargo timely removed the case to this Court, arguing that the Individual Defendants were sham defendants who had been fraudulently joined and whose citizenship should not be taken account in determining diversity jurisdiction.  (ECF No. 1.)  Kaldis then filed the present Motion to Remand.  (ECF No. 9.)

## III.   LEGAL STANDARD

### A.   Removal

A civil action may be removed from a state court to a federal district court where the action is pending if the district court has original jurisdiction over the action.  28 U.S.C. § 1441(a).  A district court has original jurisdiction over a civil action where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the dispute is between "citizens of different states."  28 U.S.C. § 1332.  Section 1332 requires complete diversity, i.e., that "the citizenship of each plaintiff is diverse from the citizenship of each defendant."  *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 67–68 (1996).  Section 1441 further limits

1  removal to cases where no defendant "properly joined and served . . . is a citizen of
2  the State in which such action is brought."  28 U.S.C. § 1441(a)(b)(2).  Removal
3  statutes are "strictly construe[d] against removal."  *Gaus v. Miles, Inc.*, 980 F.2d 564,
4  566 (9th Cir. 1992).  Federal jurisdiction must be rejected if there is any doubt as to
5  the right of removal in the first instance.  *Id.*  Accordingly, the removing party bears
6  the heavy burden of establishing original jurisdiction in the district court.  *Id.*

7  **B.    Fraudulent Joinder**

8       However, a non-diverse party may be disregarded for purposes of determining
9  whether diversity jurisdiction exists if the court determines that the party's joinder was
10  "fraudulent" or a "sham."  *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th
11  Cir. 2001).  The relevant inquiry is whether plaintiff has failed to state a cause of
12  action against the non-diverse defendant, and the failure is obvious under settled state
13  law. *Id.*

14       The burden of proving fraudulent joinder is a heavy one.  The removing party
15  must prove that there is "no possibility that plaintiff will be able to establish a cause of
16  action in State court against the alleged sham defendant."  *Good v. Prudential Ins. Co.*
17  *of Am.*, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998).  In this regard, "[r]emand must be
18  granted unless the defendant shows that the plaintiff 'would not be afforded leave to
19  amend his complaint to cure [the] purported deficiency.'"  *Padilla v. AT & T Corp.*,
20  697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009); *Macey v. Allstate Prop. & Cas. Ins.*
21  *Co.*, 220 F. Supp. 2d 1116, 1117 (N.D. Cal. 2002) ("If there is a non-fanciful
22  possibility that plaintiff can state a claim under California law against the non-diverse
23  defendants the court must remand").  "Merely a 'glimmer of hope' that plaintiff can
24  establish [a] claim is sufficient to preclude application of [the] fraudulent joinder
25  doctrine."  *Gonzalez v. J.S. Paluch Co.*, No. 12-08696-DDP (FMOx), 2013 WL
26  100210, at *4 (C.D. Cal. Jan. 7, 2013) (internal quotations omitted); *accord Ballestros*
27  *v. Am. Std. Ins. Co. of Wisc.*, 436 F. Supp. 2d 1070, 1072 (D. Ariz. 2006) (same)
28  (citing *Mayes v. Rapoport*, 198 F.3d 457, 463–64 (4th Cir. 1999)).

# IV.   DISCUSSION

The Court finds that Kaldis and Wells Fargo are diverse parties, and that the Individual Defendants were fraudulently joined.  Further, the Court finds that Wells Fargo sufficiently pleaded that Kaldis' claims clear the $75,000 threshold of § 1332.  Therefore, the Court **DENIES** Kaldis' Motion to Remand.  (ECF No. 9.)

## A.   Diversity Jurisdiction

### 1.   Kaldis' Citizenship

Kaldis argues that Wells Fargo did not sufficiently establish her citizenship in its Notice of Removal, as Wells Fargo based its determination of Kaldis' California citizenship solely on the assertion in her Complaint that she was a California "resident" at the time of the alleged incidents.  (Mot. at 6–7.)

For diversity purposes, an individual is a citizen of the state where he or she is domiciled.  *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).  A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return.  *Id.* (citing *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986)).  A person's residence can be prima facie evidence of domicile.  *State Farm Mut. Auto. Ins. Co v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994).  However, mere residence allegations are insufficient to establish citizenship on removal in light of the strong presumption against subject matter jurisdiction in a case removed from state court.  *Kanter*, 265 F.3d at 857–58 (holding that defendant had not establish plaintiffs' citizenship when defendant only referenced plaintiffs' respective residences and never actually asserted that plaintiffs were California citizens); *Wilson v. CitiMortgage*, No. 5:13-cv-02294-ODW (SPx), 2013 WL 6871822, at *1 (C.D. Cal. Dec. 17, 2013).

Generally, courts require a removing defendant to establish a plaintiff's citizenship using other facts in addition to residence, such as "voting registration and voting practices, . . . location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes."  *Lew*,

797 F.2d at 750.  Yet some courts in this district have allowed defendants to establish a plaintiff's California citizenship using only the plaintiff's admission of California residence to argue that plaintiff was a California citizen.  *See, e.g.*, *Martinez v. Wells Fargo Bank, N.A.*, No. CV 13-09547 SJO (JCGx), 2014 WL 997390, at *1 (C.D. Cal. Jan. 8, 2014); *Avila v. Allegro Mfg., Inc.*, No. CV 11-07744 SJO (MRWx), 2011 WL 6010044, at *2 (C.D. Cal. Nov. 28, 2011) ("Absent any evidence to the contrary, the Court finds Dunkel to be a citizen of California for purposes of diversity."); *Merricks-Barragan v. Maidenform, Inc.*, No. CV 11-07965 SJO (MRWx), 2011 WL 5173653, at *2 (C.D. Cal. Oct. 31, 2011).   In fact, the court in *Wexler v. Jensen Pharmaceuticals, Inc.* recently dismissed—in a single footnote—a prior attempt by Kaldis' law firm to make the same argument that she makes here.  *Wexler v. Jensen Pharmaceuticals, Inc.*, No. CV 15-03518-AB (AJWx), 2015 WL 6159101, at *8 n. 1 (C.D. Cal. Oct. 20, 2015) ("Plaintiff also attempts to argue that Defendant failed to establish Plaintiff's California citizenship . . . The Court has reviewed the record and summarily rejects [this] argument").

    Wells Fargo does more than necessary to establish Kaldis' citizenship for diversity purposes.  Contrary to Kaldis' claim that "Defendants do not provide any basis, let alone any citation or reference" for their assertion that Kaldis is a California citizen, Wells Fargo cites Plaintiff's own statement in her Complaint that she resided in California at all times mentioned in the Complaint.  (Mot. 7; NOR ¶ 6 n. 2; Compl. 3.)  Moreover, Wells Fargo also establishes that Kaldis was employed in California during the alleged incidents at issue.  (NOR ¶ 6); *see Lew*, 797 F.2d at 750.  Thus, Wells Fargo has cited multiple facts to establish Kaldis' California citizenship.  Further, Kaldis never actually disputes that she is a California citizen; in fact, she argues in the alternative that diversity does not exist precisely because both she and the Individual Defendants are California citizens.  (Mot. 7.)  Therefore, the Court rejects Kaldis' argument that Defendants have not sufficiently established her citizenship.

6

2.     Wells Fargo's Citizenship

Neither party contests Wells Fargo's citizenship.  Under 28 U.S.C. § 1348, national banking associations are citizens of the state where their main office is located.  *See Am. Surety Co. v. Bank of Cal.*, 133 F.2d 160, 161–62 (9th Cir. 1943); *Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006) (noting that "one would sensibly 'locate' a national bank for . . . qualification for diversity jurisdiction, in the State designated in its articles of association as its main office").  Wells Fargo has its main office in Sioux Falls, South Dakota, and is therefore a citizen of South Dakota. (NOR ¶ 7); *see also Rouse v. Wachovia Mortgage, FSB*, 747 F.3d 707, 711 (9th Cir. 2014) (holding that "Wells Fargo is a citizen only of South Dakota, where its main office is located").  Thus, Kaldis and Wells Fargo are diverse parties.

**B.     Fraudulent Joinder**

However, the main dispute over diversity jurisdiction arises when considering the citizenship of the Individual Defendants.  As Kaldis notes, the Individual Defendants are all citizens of California, which would initially seem to destroy diversity given Plaintiff's California citizenship.  But Wells Fargo argues that the Individual Defendants' citizenship should be disregarded because they are sham defendants that have been fraudulently joined.  (NOR ¶ 20; Opp'n 5, ECF No. 11.) While Kaldis asserts that the Individual Defendants have not been fraudulently joined, she does little if anything to actually counter the cogent arguments Defendants have made.  Instead, Kaldis essentially repeats the allegations of her initial Complaint against the Individual Defendants.  (*See* Mot. 9–12.)  The Court analyzes each of Well Fargo's arguments regarding fraudulent joinder in turn.

1.     FEHA Claims against Rabadi, Majidian, and El Hage

Kaldis makes two separate claims of harassment against the Individual Defendants under California Government Code section 129409(j): claims for disability harassment, and harassment on the basis of taking CFRA leave.  (Compl. ¶¶ 25–30, 61–66); Cal. Gov't Code § 12940(j).  Defendants respond that Kaldis failed

1    to exhaust her administrative remedies before bringing the suit, and thus is barred

2    from now bringing these claims.  (NOR ¶ 11; Opp'n 5–7.)

3          Section 12960 requires that an employee "exhaust the administrative remedy

4    provided by the statute by filing a complaint with the Department of Fair Employment

5    and Housing ("DFEH") and . . . obtain[ing] from the Department a notice of right to

6    sue in order to be entitled to file a civil action in court based on violations of the

7    FEHA." *Romano v. Rockwell Int'l, Inc.*, 14 Cal. 4th 479, 492 (1996); Cal. Gov't Code

8    § 12960(b).  In order for a plaintiff "to bring a civil lawsuit under the FEHA, the

9    defendants must have been named in the caption or body of the DFEH charge." *Cole*

10   *v. Antelope Valley Union High School Dist.*, 47 Cal. App. 4th 1505, 1515 (1996).

11   Kaldis filed her DFEH complaint on February 18, 2016, and named only Wells Fargo

12   as a respondent.  (Req. for Judicial Notice 8, ECF No. 12.)  The complaint form even

13   includes a space to name co-respondents, but Kaldis failed to include the Individual

14   Defendants.  (*Id.* at 8–10.)  Since Rabadi, Majidian, and El Hage were never named in

15   Kaldis' FEHA complaint, Kaldis cannot now name them in her Complaint.  *See Cole*,

16   47 Cal. App. 4th at 1515 (holding that the plaintiff could not bring an FEHA action

17   against two codefendants in the case since he had not named in his DFEH complaint).

18          2.    IIED Claims Against Rabadi and Majidian

19          Similarly, Kaldis cannot state claims against Rabadi and Majidian for IIED.

20   IIED claims are subject to a two-year statute of limitations under California Code of

21   Civil Procedure section 335.1.  This two year period begins to run "when the plaintiff

22   suffers severe emotional distress as a result of outrageous conduct by the defendant."

23   *Soliman v. CVS RX Servs., Inc.*, 570 F. App'x 710, 711 (9th Cir. 2014).  As mentioned

24   above, the last time Rabadi and Majidian could have inflicted emotion distress on

25   Kaldis was in February 2014, since Kaldis initially quit Wells Fargo at that time and

26   was never again at their branch or under their management.  Kaldis filed this action

27   for IIED in state court on July 25, 2016—more than two years after the last

28   emotionally distressing statements were allegedly made by Rabadi or Majidian.  (*See*

8

1    ECF No. 1, Ex. A.)   Thus, Kaldis' IIED claims against Rabadi and Majidian are

2    barred by the statute of limitations.

3              3.     <u>IIED Claim Against El Hage</u>

4              While Kaldis' IIED claim against El Hage is not barred by the two-year statute

5    of limitations  (as El Hage allegedly inflicted emotional distress on Plaintiff through

6    2015), Wells Fargo correctly argues that the claim is barred by the Worker's

7    Compensation Act.   (Not. ¶ 17–18.); *see* Cal. Lab. Code § 3200, et seq.   The

8    California Supreme Court has held that when the "alleged wrongful conduct . . .

9    occur[s] at the worksite, in the normal course of the employer-employee relationship

10   . . . workers' compensation is a plaintiff['s] exclusive remedy for any injury that may"

11   result.  *Miklosy v. Regents of Univ. of Cal.*, 44 Cal. 4th 876, 902 (2008).  Further,

12   "[w]here [the] alleged misconduct by an employer is a normal part of the employment

13   relationship, such as demotions, criticism, and negotiations of grievances, an

14   employee who suffers emotional distress cannot avoid the exclusivity rule by simply

15   characterizing the employer's decisions as manifestly unfair, outrageous, harassment,

16   or intended to cause emotional disturbance resulting in disability."  *Langevin v. Fed.*

17   *Exp. Corp.*, No. CV 14-08105 MMM (FFMx), 2015 WL 1006367, at *12 (C.D. Cal.

18   Mar. 6, 2015) (holding that the individual defendants were fraudulently joined and

19   denying the plaintiffs' motion for remand); *see also Yau v. Santa Margarita Ford Inc.*,

20   229 Cal. App. 4th 144, 162 (2014) (upholding the trial court's ruling that the Worker's

21   Compensation Act provided the sole remedy for the plaintiff's IIED claims).

22             All of the IIED that Kaldis allegedly suffered at the hands of El Hage occurred

23   during the normal course of their employer-employee relationship.  (Compl. ¶ 11(i).)

24   The claims are based solely on El Hage's personnel management decisions.  (*Id.*); *see*

25   *Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55, 80 (1996) ("[a] simple

26   pleading of personnel management activity is insufficient to support a claim of

27   intentional infliction of emotional distress, even if improper motivation is alleged").

28

1   Thus, the Worker's Compensation Act bars Kaldis from asserting her IIED claim
2   against El Hage in this Court.[2]

3       A defendant bears a heavy burden in establishing that other defendants have
4   been fraudulently joined to a cause of action.  But Wells Fargo has satisfied that
5   burden here because Kaldis failed to exhaust her administrative remedies against
6   Defendants regarding her FEHA harassment claims and cannot establish her IIED
7   claims due to the statute of limitations and protection of managerial activities.

8   **C.    Amount in Controversy**

9       Finally, Kaldis argues that Wells Fargo has not established that the amount in
10  controversy actually exceeds $75,000.  (Mot. 13–14.)  When a plaintiff contests the
11  defendant's allegation that the amount in controversy exceeds $75,000, "section
12  1446(c)(2)(B) instructs: '[R]emoval . . . is proper on the basis of an amount in
13  controversy asserted' by the defendant 'if the district court finds, by the
14  preponderance of the evidence, that the amount in controversy exceeds' the
15  jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.
16  Ct. 547, 553–54 (2014); 28 U.S.C. § 1446.  Discovery may then be taken, and "[i]n
17  case of a dispute, the district court must make findings of jurisdictional fact to which
18  the preponderance standard applies." *Dart*, 135 S. Ct. at 554 (internal citations
19  omitted)).

20      Kaldis never actually claims that the amount in controversy does not exceed
21  $75,000.  Rather, she cites *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*,
22  199 F. Supp. 2d 993 (C.D. Cal. 2002), to argue that a "'defendant must submit
23  summary-judgment type evidence to establish that the actual amount in controversy
24  exceeds $75,000.'"  (Mot. 14.)  But the Supreme Court established in 2014 that "a

25

26  [2] In her Complaint, Kaldis seems to imply that Rabadi's friendship with El Hage contributed in some
27  way to El Hage's mistreatment of Kaldis.  (*See* Compl. ¶ 11(i).)  To the extent Kaldis is alleging
    such a theory of liability, it is also barred by the Worker's Compensation Act, for the action El Hage
28  ultimately took against Kaldis occurred in the normal course of their employer-employee
    relationship.

defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 135 S. Ct. at 554. Any "evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Id.*

Here, Wells Fargo did all that was required of it to establish that Kaldis' claims clear the $75,000 threshold. First, Wells Fargo stated a plausible allegation that the amount in controversy exceeded the jurisdictional threshold in its Notice of Removal, analyzing Kaldis' lost earnings due to her firing, potential emotional distress damages she could recover in excess of $75,000, potential attorneys' fees that could total up to $90,000, and the massive punitive damages she could potentially recover. (NOR ¶¶ 24–27.) Second, when Kaldis actually contested the amount in controversy in her Motion to Remand, Wells Fargo responded with evidence that a victory for Kaldis in the case would exceed the $75,000 threshold by providing evidence of her hourly wages and citing comparable cases in which lost wages, emotional distress damages, punitive damages, and attorney's fees under FEHA each individually exceeded or came close to exceeding the threshold. (Opp'n 11–15; Campbell Decl. ¶ 7.) Thus, the Court finds that Defendants have sufficiently established that the amount in controversy exceeds $75,000.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## V.     CONCLUSION

Because the Court finds that Defendants Najla Rabadi, Sara Majidian, and Rita El Hage were fraudulently joined and the amount in controversy exceeds $75,000, it has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.  The Court therefore **DENIES** Kaldis' Motion to Remand.  (ECF No. 9.)  Furthermore, based on the foregoing analysis, the Court **DISMISSES** Rabadi, Majidian, and El Hage from this action with prejudice.

**IT IS SO ORDERED.**

October 28, 2016

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**