O

# United States District Court
# Central District of California

ANGELA KALDIS,

        Plaintiff,

    v.

WELLS FARGO BANK, N.A.; and DOES 1–10, inclusive,

        Defendants.

Case № 2:16-cv-06407-ODW(GJSx)

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [19]**

## I. INTRODUCTION

Plaintiff Angela Kaldis, a former employee of Defendant Wells Fargo Bank, N.A., alleges that her supervisors harassed her during her employment and that Wells Fargo wrongfully terminated her employment. Before the Court is Wells Fargo's Motion for Summary Judgment. (ECF No. 19.) For the reasons discussed below, the Court **GRANTS** the Motion.[1]

## II. FACTUAL BACKGROUND

In August 2012, Wells Fargo hired Plaintiff as a personal banker at its branch in Pacific Palisades, California. (Statement of Undisputed Facts ("SUF") ¶ 1, ECF No. 23; Statement of Additional Material Facts ("AMF") ¶ 1, ECF No. 27.) Beginning in

---

[1] After considering the papers in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

April 2013, Plaintiff reported directly to branch manager Najla Rabadi. (SUF ¶ 3; AMF ¶ 6.) Sarah Majidian, the branch's service manager, oversaw all bank tellers at the branch—including Plaintiff—but Plaintiff did not directly report to her. (SUF ¶ 4.)

According to Plaintiff, Rabadi made several offensive comments to her about her weight and eating habits. (AMF ¶¶ 8–14.)[2] Plaintiff also believed that Rabadi treated her worse than her male colleagues. That is, Rabadi would "yell and scream" at her but not at male personal bankers (AMF ¶ 15), would make Plaintiff wait to eat lunch until the male personal bankers had finished eating (AMF ¶ 16), and would turn off Plaintiff's internet connection "but no one else's" (AMF ¶ 17). Plaintiff contemplated contacting human resources about these issues, but Rabadi warned her not to do so otherwise she "would never be promoted or trusted again." (AMF ¶ 18.) Rabadi's conduct caused Plaintiff distress and anxiety for which she saw a psychiatrist and received a Xanax prescription. (AMF ¶ 19.) Rabadi then further ridiculed her for her anxiety and depression and for taking Xanax. (AMF ¶¶ 20–23.)[3] On one occasion, Majidian asked Plaintiff to come into her office, accused her of "slurring her words" and "being on drugs," and asked her if she "needs help." (AMF ¶ 24.) Plaintiff twice requested to be transferred to another branch, but these requests were denied. (AMF ¶ 25.) In January 2014, Plaintiff resigned, allegedly because of the hostile work environment, and began working as a personal banker for a Wells Fargo client. (SUF ¶ 5; AMF ¶ 26.) Plaintiff never worked with either Rabadi or Majidian after this. (SUF ¶ 6.)

In March 2014, Plaintiff visited the Pacific Palisades branch as a customer.

---

[2] This included: telling Plaintiff that "if you want to lose weight, you should eat one head of cabbage a day"; calling Plaintiff "fat"; telling Plaintiff that she should only drink a smoothie for lunch; telling Plaintiff she "should not be eating" in front of her peers; telling Plaintiff that her male coworkers should eat before her; and telling her that if she "lost 50 pounds, [she] could come to her wedding." (AMF ¶¶ 8–14.)

[3] This included repeatedly saying: "Angela is going to have to take her Xanax" (AMF ¶ 21); "Angela is going to have an anxiety attack" (AMF ¶ 22); and "Angela, do you need to go and take a Xanax break?" (AMF ¶ 23).

(SUF ¶ 7; AMF ¶ 27.) By then, Rita El Hage had become the manager of that branch. (SUF ¶ 7; AMF ¶ 28.) During this visit, either Plaintiff or El Hage expressed an interest in Plaintiff returning to work at Wells Fargo. (SUF ¶ 8; AMF ¶ 27.) On May 27, 2014, Wells Fargo rehired Plaintiff to work as a personal banker at the Pacific Palisades branch, where she reported directly to El Hage. (SUF ¶¶ 9, 10.) Although Plaintiff and El Hage were friendly at first, El Hage eventually started making comments to Plaintiff that made her feel uncomfortable. (*See* Compl. ¶ 11(i); Kaldis Depo. at 162–63.) Specifically, El Hage told Plaintiff that she "would never be promoted before the guys" at the branch and that district manager Abraham Abboud "didn't like her" and thought she should "find another job." (AMF ¶ 31.)[4] On February 2, 2015, Plaintiff voluntarily transferred to Wells Fargo's Malibu Main branch, where she reported to branch manager Nicholas Grandchamp. (SUF ¶¶ 15, 16.) Plaintiff never worked with El Hage again after her transfer, except to speak with her on the phone regarding customers. (SUF ¶ 18.)

At some point after her transfer, Wells Fargo received a complaint from a customer claiming that Plaintiff had opened an account for him without his consent. (SUF ¶ 23.) Thereafter, on April 20, 2015, Plaintiff took a medical leave of absence and applied for short-term disability benefits.[5] (SUF ¶ 24.) Per Wells Fargo's Team Member Handbook, an employee who takes medical leave must either apply and receive approval for short term disability benefits or must provide a timely medical certification to Wells Fargo's third-party benefits/leave administrator, Liberty Mutual. (SUF ¶ 20.) Both methods required Plaintiff to provide medical documentation supporting her leave, and Plaintiff generally understood that she could take medical

---

[4] Wells Fargo notes that a few months after it rehired Plaintiff, El Hage and Abboud nominated Plaintiff to enroll in Wells Fargo's Licensed Banker Program, which Wells Fargo subsequently approved. (SUF ¶¶ 11, 12.) Plaintiff ultimately failed the program's licensing exams and thus stopped participating in the program. (SUF ¶ 14.) It is unclear how Plaintiff's participation in this program is relevant to her claims.

[5] Wells Fargo suggests that Plaintiff took this leave after getting wind that she was under investigation regarding the customer complaint. (SUF ¶ 24.) Plaintiff disputes that this was the reason for her taking leave. (*Id.*) The Court finds this dispute immaterial.

leave only to the extent that she provided such documentation. (SUF ¶¶ 21, 22, 27.) On May 22, 2015, Plaintiff's healthcare provider, Dr. Damon Raskin, submitted forms to Liberty Mutual supporting her claim for medical leave and disability insurance payments and stated that he anticipated releasing Plaintiff to return to work on July 20, 2015. (SUF ¶¶ 28, 29.)

On June 23, 2015, Liberty Mutual sent a letter to Dr. Raskin requesting the following information: Plaintiff's medical documentation from June 1, 2015, onward, and Plaintiff's return-to-work date. (App. of Exs. at 304, 349, ECF No. 19-5; Harkness Decl. ¶ 4 ECF No. 19-3.)[6] Dr. Raskin responded that he had no additional documentation to submit beyond May 22, 2015, and that Plaintiff's return-to-work date was still July 20, 2015. (App. of Exs. at 307, 349.) Thus, on July 2, 2015, Liberty Mutual sent Plaintiff a letter requesting the updated documentation no later than July 30, 2015. (*Id.*) The letter stated that Plaintiff's disability benefits claim "may be closed" if she did not provide this information by then. (App. of Exs. at 307.) Plaintiff never sent any records in response to this letter. (*See* SUF ¶ 30.) Moreover, it does not appear that Plaintiff returned to work after July 20, 2015. On July 21, 2015, Liberty Mutual left a voicemail for Plaintiff regarding her return-to-work date and any updated medical records. (App. of Exs. at 348.) It does not appear that Plaintiff returned this call. (*Id.*) On July 31, 2015, Liberty Mutual sent Plaintiff another letter requesting this documentation no later than August 17, 2015. (App. of Exs. at 310.) The letter again stated that Plaintiff's "claim may be closed" if she did not provide this information by then. (*Id.*) And, again, Plaintiff did not send any

---

[6] Harkness, who is a disability claims operations manager for Liberty Mutual, submits a declaration that interprets notes written by another claims case manager regarding Plaintiff's claim. (Harkness Decl. ¶ 4.) Plaintiff objects to Harkness's testimony (and possibly the underlying notes) on multiple grounds, including hearsay. (ECF No. 23 at 2–4.) As to the notes themselves, they are still admissible because they fall under the business records exception to hearsay. *See* Fed. R. Evid. 803(6); Harkness Decl. ¶ 3 (establishing the factual prerequisites for the exception). As to Harkness's testimony regarding the contents of the notes, the Court does not rely on that testimony and thus finds it unnecessary to rule on Plaintiff's objection. The Court also overrules Plaintiff's other scattershot objections to the underlying notes.

4

documents in response. (*See* SUF ¶ 30.) On August 20, 2015, Dr. Raskin confirmed to Liberty Mutual that he had not extended Plaintiff's return-to-work date beyond July 20, 2015. (App. of Exs. at 347.) Five days later, Liberty Mutual left Plaintiff a voicemail and sent her a letter stating that it had closed her disability benefits claim because she was no longer being held from work. (*Id.* at 327, 347.)

The extent of Wells Fargo's communication with Plaintiff after this date is unclear. Plaintiff testified that her supervisor at the Malibu Main branch, Nicholas Grandchamp, "always just kinda checked on me and made sure I was doing okay. And just said, you know, let me know when you need to come back. I mean, it was always very - - nothing too deep." (Kaldis Depo. at 187–88.) An employee relations consultant at Wells Fargo also testified that she had heard that Grandchamp had reached out to Plaintiff in November 2015 regarding her planned return date but that Plaintiff never provided him with a specific date. (Tautkus Depo. at 31–33.) There is also some suggestion that Grandchamp arranged with Plaintiff for her to come in to discuss her employment on December 3 or 4, 2015, but that she never showed up. (*Id.*) Plaintiff neither confirms nor denies that she ever agreed to such a meeting. In any event, on December 1, 2015—over four months past her return-to-work date—Wells Fargo sent Plaintiff a letter stating that it was terminating her employment, effective as of December 8, 2015, based on her taking an unapproved leave of absence. (SUF ¶ 32; App. of Exs. at 331.)

On February 18, 2016, Plaintiff filed a complaint with the Department of Fair Employment and Housing ("DFEH") and obtained an immediate right-to-sue letter. (SUF ¶ 35.) On July 25, 2016, Plaintiff filed this action in the Los Angeles Superior Court, asserting sixteen common law and statutory claims. (ECF No. 1-1.) Wells Fargo subsequently removed the case to federal court and has moved for summary judgment on all of Plaintiff's claims. (ECF Nos. 1, 19.) That Motion is now before the Court for decision.

/ / /

## III. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000). Where the moving and nonmoving parties' versions of events differ, courts are required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott*, 550 U.S. at 378.

## IV. DISCUSSION

Plaintiff's sixteen claims can be grouped into the following general categories: (1) gender and disability harassment claims based on various comments made by Rabadi, Majidian, El Hage, and possibly Abboud; (2) discrimination, retaliation, and wrongful termination claims based on the denial of Plaintiff's transfer requests, her initial resignation, and her December 2015 termination; (3) failure to accommodate or engage in the interactive process based on Wells Fargo terminating Plaintiff before the December 3 or 4, 2015 meeting; (4) breach of contract based on Wells Fargo's termination of Plaintiff without good cause; and (5) intentional infliction of emotional distress and negligent supervision, hiring, and training of Wells Fargo supervisors based on the various comments made by Rabadi, Majidian, El Hage, and possibly

Abboud. (*See generally* Compl., ECF No. 1-1.) Wells Fargo contends that it is entitled to summary judgment on each category of claims for various reasons.[7] The Court addresses each argument in turn.

A.  **Gender and Disability Harassment**

Wells Fargo contends that Plaintiff's gender and disability harassment claims are time-barred. Wells Fargo points out that all of the harassing statements made to Plaintiff occurred before she transferred to the Malibu Main branch on February 2, 2015. Because Plaintiff is required to file a DFEH complaint within one year after the allegedly wrongful conduct occurs, and because Plaintiff did not do so until February 18, 2016, Wells Fargo argues that Plaintiff's harassment claims fails. Plaintiff responds that the harassment she suffered was part of a course of unlawful conduct that continued up until her termination in December 2015, and thus the continuing violations doctrine tolled the period in which she was required to file a DFEH complaint. The Court agrees with Wells Fargo that the claims are barred.

Any person who brings a civil action under FEHA must first exhaust their administrative remedies by filing a complaint with the DFEH. Cal. Gov't Code § 12960(b); *Romano v. Rockwell Int'l, Inc.*, 14 Cal. 4th 479, 492 (1996) ("The timely filing of an administrative complaint is a prerequisite to the bringing of a civil action for damages under the FEHA."). Generally, the employee must file the DFEH complaint within one year after the allegedly unlawful conduct occurred. Cal. Gov't Code § 12960(d). However, "the California Supreme Court has held the continuing violations doctrine may toll the section 12960 accrual period if the employer engaged in a series of continuing and related FEHA violations and at least one of those violations occurred within the one-year period." *Acuna v. San Diego Gas & Elec. Co.*, 217 Cal. App. 4th 1402, 1412 (2013) (citing *Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798, 811–24 (2001)). For this exception to apply, the plaintiff must show: "(1) the

---

[7] Wells Fargo also argues that it is entitled to summary judgment on Plaintiff's punitive damages claim. Because the Court grants summary judgment on all of Plaintiff's substantive claims, the Court need not address the punitive damages issue.

actions are sufficiently similar in kind; (2) they occur with sufficient frequency; and (3) they have not acquired a degree of 'permanence' so that employees are on notice that further efforts at informal conciliation with the employer to obtain accommodation or end harassment would be futile." *Richards*, 26 Cal. 4th at 802.

Here, it is undisputed that the harassing comments made toward Plaintiff about her gender or disability occurred before February 18, 2015. The only wrongful conduct that Plaintiff contends occurred after this date is her termination, but the Court fails to see any connection between the harassment and her termination. First, verbally harassing comments concerning gender are entirely distinct in kind from a purportedly wrongful termination based on taking disability leave. Similarly, while verbally harassing comments concerning her disability have a marginally closer connection to the reason for her allegedly wrongful termination, it is still insufficiently similar for purposes of the continuing violations doctrine. Second, all of the harassing comments (whether based on gender or disability) did not occur with sufficient frequency under the second prong of the doctrine. The bulk of the harassing conduct occurred almost entirely before she quit in January 2014—about two years prior to her termination. The subsequent comments by El Hage and Abboud were far less egregious and far more sporadic and isolated than those by Rabadi and Majidian, and in any event also occurred over a year prior to her termination. In sum, the link between the harassing conduct and the termination is far too attenuated to fall under the continuing violations doctrine. Thus, the Court grants summary judgment on Plaintiff's harassment claims.

**B.     Discrimination, Retaliation, and Wrongful Termination**

Wells Fargo argues that it terminated Plaintiff for a legitimate, non-discriminatory/retaliatory reason: she failed either to return to work or to submit medical documentation supporting continued medical leave for more than four months after July 20, 2015. Moreover, Wells Fargo contends, there is no substantial evidence that the official reason for her termination was pre-textual. In response, Plaintiff

argues that the burden-shifting analysis does not apply here because there is direct evidence of improper conduct. Plaintiff alternatively argues that there is sufficient evidence of pretext to survive summary judgment.[8] The Court again agrees with Wells Fargo.

Discrimination and retaliation claims under FEHA are generally subject to a burden-shifting analysis. *See, e.g., Wills v. Superior Court*, 195 Cal. App. 4th 143, 159 (2011) (discrimination); *McRae v. Dep't of Corr. & Rehab.*, 142 Cal. App. 4th 377, 388 (2006) (retaliation). That is, the plaintiff must first establish a prima facie case of discrimination or retaliation. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005). "Once an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action. If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation 'drops out of the picture,' and the burden shifts back to the employee to prove intentional retaliation." *Id.* (citations omitted).

"The plaintiff may establish pretext either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. Circumstantial evidence of pretense must be specific and substantial in order to create a triable issue with respect to whether the employer intended to discriminate on an improper basis." *Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 52, 68–69 (2000) (citations and internal quotation marks omitted). "An employee in this situation cannot simply show the employer's decision was wrong, mistaken, or unwise. Rather, the employee must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or

---

[8] Plaintiff does not dispute that the reason Wells Fargo proffered for her termination would, if true, be a legitimate reason for termination. In addition, while Plaintiff suggests that the disapproval of her transfer requests and her resignation/constructive termination are also actionable, both are time-barred. Any FEHA claim arising therefrom is barred because Plaintiff waited longer than one year to file a DFEH complaint. Cal. Gov't Code § 12960(d). Any wrongful termination claim would also be barred because Plaintiff waited longer than two years to file this action. *See Prue v. Brady Co./San Diego, Inc.*, 242 Cal. App. 4th 1367, 1382 (2015) (two-year limitations period for wrongful termination claims).

1 contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Id.* (citations, brackets, and internal quotation marks omitted).

The only exception to the burden-shifting framework is where the plaintiff has direct evidence of discrimination or retaliation. *Id.* at 67. "Direct evidence is evidence which proves a fact without inference or presumption," *Trop v. Sony Pictures Entm't Inc.*, 129 Cal. App. 4th 1133, 1145 (2005), and is generally limited to situations where the employer expressly states that it acted against the employee on an unlawful basis. *See DeJung v. Superior Court*, 169 Cal. App. 4th 533, 550 (2008) (direct evidence of age discrimination where the employer expressly told plaintiff they would not hire him because they were "looking for someone younger"); *Green v. State*, 42 Cal. 4th 254, 275 (2007) (direct evidence of disability discrimination where supervisor told employee that he could not return to work because he had hepatitis C). But even where the plaintiff can show direct evidence of discrimination, "the defendant can avoid liability . . . by proving the plaintiff would have been subjected to the same employment decision without reference to the unlawful factor." *Morgan*, 88 Cal. App. 4th at 67–68.

The Court easily concludes that there is no direct evidence of discrimination or retaliation. Plaintiff relies on the comments by Rabadi and El Hage to show that the denial of her transfer requests, as well as her January 2014 resignation (which she frames as a constructive termination), was expressly based on a discriminatory or retaliatory reason. First, as previously noted, any claim based on Plaintiff's transfer requests or her resignation is time-barred. Second, even if they were not time-barred, none of the comments by either referred specifically to Plaintiff's transfer requests or potentially forcing her to resign, and thus these comments are not direct evidence of discrimination or retaliation. Finally, there are no comments by any Wells Fargo personnel stating that they discharged Plaintiff in December 2015 because she took

lawful and proper medical leave (as opposed to her simply not returning to work under the guise of taking medical leave).

The Court also concludes that Plaintiff has not presented sufficient evidence showing that the reason for Plaintiff's December 2015 termination was pretextual. Plaintiff points to two facts that it contends establishes pretext: (1) Wells Fargo sent Plaintiff the termination letter on December 1, 2015, even though she had a meeting scheduled with her supervisors for December 3 or 4, 2015; and (2) Wells Fargo did not produce any evidence of supposed communications between Plaintiff and Liberty Mutual/Wells Fargo after August 2015. Neither reason is sufficient. As to the fact that Wells Fargo decided to terminate Plaintiff's employment before the planned meeting occurred, this is not "substantial" evidence that the reason for Plaintiff's termination is "unworthy of credence." *Morgan*, 88 Cal. App. 4th at 68–69. There are a myriad of legitimate explanations for why Wells Fargo might have sent her the letter before the meeting occurred—including simply by accident. This mild inconsistency in the termination process is alone insufficient to show that any scheming or treachery was afoot. Indeed, the termination did not even take effect until December 8, 2015, several days after the meeting was supposed to occur, which substantially lessens (if not eliminates) any inference that Wells Fargo would not have been receptive to reconsidering its decision. As to the purported lack of documentary evidence of communications after August 2015, it is unclear what evidence Plaintiff even believes Wells Fargo should have produced. The communications after this date were by phone, not by letter; indeed, Plaintiff had made clear that she had no interest in responding to written communications regarding her disability. No reasonable jury could infer pretext from this fact.

At bottom, the evidence overwhelming demonstrates that Wells Fargo terminated Plaintiff's employment for a legitimate, non-discriminatory (and non-retaliatory) reason: she simply did not show up to work for *months* after her scheduled return-to-work date, and she gave no adequate explanation for not doing so. The

Court therefore grants summary judgment on Plaintiff's discrimination, retaliation, and wrongful termination claims.[9]

## C. Reasonable Accommodation and Interactive Process

Wells Fargo argues that these claims fail because Plaintiff never requested any accommodation at work and because Wells Fargo maintained communication with Plaintiff during her leave. Plaintiff argues that the meeting she was meant to attend on December 3 or 4, 2015, was a meeting to discuss accommodations for her disability and that Wells Fargo's decision to terminate her prior to the meeting is sufficient to support these claims.

Under FEHA, it is an unlawful employment practice for an employer to: (1) "fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee"; or (2) "fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition." Cal. Gov't Code § 12940(m)(1), (n). Under either prong, the burden is on the employee to at least give the employer notice of his or her disability, "such that [the employer is] on notice that [the employee] require[s an] accommodation." *Avila v. Cont'l Airlines, Inc.*, 165 Cal. App. 4th 1237, 1252 (2008). Moreover, the employee "retains a duty to cooperate with the employer's efforts by explaining his or her disability and qualifications. Reasonable accommodation thus envisions an exchange between employer and employee where each seeks and shares information to achieve the best match between the employee's capabilities and available positions." *Prilliman v. United Air Lines, Inc.*, 53 Cal. App. 4th 935, 950 (1997)

---

[9] Plaintiff does not dispute that her wrongful termination claim based on the December 2015 termination essentially duplicates her FEHA claims, and thus is similarly subject to summary judgment. *See Stevenson v. Superior Court*, 16 Cal. 4th 880, 904 (1997) ("[W]hen a plaintiff relies upon a statutory prohibition to support a common law cause of action for wrongful termination in violation of public policy, the common law claim is subject to statutory limitations affecting the nature and scope of the statutory prohibition.").

(citations and brackets omitted).

Here, Plaintiff never requested an accommodation, and Wells Fargo was never on notice that Plaintiff continued to suffer from a disability that required an accommodation after July 20, 2015. Wells Fargo knew, at most, that Plaintiff suffered from anxiety and/or other psychological conditions that precluded her from working before this date. There is no evidence, however, that Wells Fargo knew of the nature of her disability after this date, how it might affect her ability to work, or whether there was some sort of accommodation that she needed to return to work. This is despite several phone calls from Liberty Mutual and Plaintiff's supervisor attempting to ascertain the status of her medical condition and her return-to-work date. Instead, Plaintiff simply did not return to work.

The Court is not convinced by Plaintiff's argument that the planned meeting between Plaintiff and her supervisors in the beginning of December 2015 was intended to discuss accommodation issues. The Wells Fargo employee who testified to this planned meeting did not identify the purpose of the meeting. Moreover, Plaintiff conspicuously failed to state either in her deposition or in her declaration that she even had planned any kind of meeting with her supervisors at that time. And, of course, the icing on top of all of this is that Plaintiff simply failed to show up at this purported meeting, even though her termination was not effective for several days after that. Thus, summary judgment on these claims is appropriate.

**D.     Breach of Contract**

Wells Fargo argues that Plaintiff was an at-will employee and thus not subject to any "good cause" termination requirement. In response, Plaintiff cites the law regarding at-will employment and then states simply that "[t]he factors suggest that this is a triable issue." (Opp'n at 17.) "Labor Code section 2922 establishes a presumption of at-will employment if the parties have made no express oral or written agreement specifying the length of employment or the grounds for termination. This presumption may, however, be overcome by evidence that despite the absence of a

specified term, the parties agreed that the employer's power to terminate would be limited in some way, e.g., by a requirement that termination be based only on 'good cause.'" *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 677 (1988). Here, Plaintiff signed an offer of employment that specifically stated that her employment at Wells Fargo was at-will and could be terminated with or without cause. (App. of Exs. at 205.) Plaintiff provides absolutely no testimony indicating that there was, or even that she believed that there was, an implicit agreement between herself and Wells Fargo to work on anything but an at-will basis. Summary judgment on Plaintiff's breach of contract claims is therefore appropriate.

**E.     IIED and Negligence**

Wells Fargo argues that Plaintiff's IIED claims are barred by the statute of limitations to the extent they are based on conduct that occurred before July 2014. To the extent the claim is based on conduct that occurred after this date, Wells Fargo argues that the conduct is not "extreme and outrageous" as a matter of law and that an IIED claim based on such conduct is in any event preempted by California's Worker's Compensation Act. Finally, Wells Fargo argues that the negligent hiring, supervision, and/or training claim is also preempted to the extent it is based on the same conduct that underlies the IIED claim. The Court agrees that both the IIED and negligence claims are barred.

**1.     Statute of Limitations**

An IIED claim is subject to a two-year statute of limitations. Cal. Code Civ. Proc. § 335.1; *Pugliese v. Superior Court*, 146 Cal. App. 4th 1444, 1450 (2007). The Court also concludes that Plaintiff's negligence claim is subject to the same two-year statute of limitations for personal injuries. Cal. Code Civ. Proc. § 335.1 (two-year statute of limitations "for . . . injury to . . . an individual caused by the wrongful act or neglect of another"); *see Huimin Song v. Cty. of Santa Clara*, No. 5:11-CV-04450-EJD, 2013 WL 6225263, at *4 (N.D. Cal. Nov. 25, 2013) (two-year statute of limitations for negligent hiring, training and retention claims in employment action);

*Freeney v. Bank of Am. Corp.*, No. CV1502376MMMPJWX, 2015 WL 12535021, at *36 (C.D. Cal. Nov. 19, 2015) ("Plaintiffs' negligent hiring claim is . . . subject to a two-year statute of limitations."); *Walker v. Boeing Corp.*, 218 F. Supp. 2d 1177, 1183 (C.D. Cal. 2002) (personal injury statute of limitations applies to common law negligence and defamation claim arising from a wrongful termination); *cf. Richardson v. HRHH Gaming Senior Mezz, LLC*, 99 F. Supp. 3d 1267, 1275 (D. Nev. 2015) (negligent hiring, training, and supervision claim in a racial discrimination action subject to Nevada's two-year statute of limitations for personal injuries); *Linville v. State of Hawai'i*, 874 F. Supp. 1095, 1104 (D. Haw. 1994) (negligence claim in a gender discrimination and wrongful termination lawsuit subject to Hawaii's personal injury statute of limitations); *Roman v. Cty. of Los Angeles*, 85 Cal. App. 4th 316, 323 (2000) (personal injury statute of limitations applies to negligent infliction of emotional distress in discrimination lawsuit).[10]  Plaintiff filed this action on July 25, 2016, and thus any claim that accrued prior to July 25, 2014—including any statements made by Rabadi and Majidian prior to Plaintiff's January 2014 resignation and any negligence by Wells Fargo in connection with its hiring, supervision, or training of them—cannot form the basis of either her IIED claim or her negligence claim.

### 2. Worker's Compensation Exclusivity

Generally, California's Worker's Compensation Act provides the exclusive means for redress of personal injuries that arise in the workplace.  Thus, both IIED claims and negligence claims arising in the course of employment are barred "when the misconduct attributed to the employer is actions which are a normal part of the

---

[10] Wells Fargo did not move for summary judgment on any portion of Plaintiff's negligence claim based on expiration of the statute of limitations. To the extent summary judgment is therefore inappropriate on that basis, *see generally Albino v. Baca*, 747 F.3d 1162, 1176–77 (9th Cir. 2014), the Court elects to dismiss *sua sponte* the portion of this claim that is barred by the statute of limitations. *See Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) ("A trial court may dismiss a claim sua sponte under [Rule] 12(b)(6)."). It is clear from the face of the complaint, which essentially mirrors the facts on which Plaintiff relies to oppose Wells Fargo's summary judgment motion, that any pre-July 2014 conduct is not actionable as time-barred. (Compl. ¶ 11(a)–(g).)

employment relationship, such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances." *Cole v. Fair Oaks Fire Prot. Dist.*, 43 Cal. 3d 148, 160 (1987); *see also Miklosy v. Regents of Univ. of Cal.*, 44 Cal. 4th 876, 902–03 (2008); *Jones v. Dep't of Corr. & Rehab.*, 152 Cal. App. 4th 1367, 1384 (2007) (negligent supervision and retention claim barred by worker's compensation exclusivity to same extent as other common law claims). However, worker's compensation exclusivity does not apply when the employer's conduct violates a statute, contravenes fundamental public policy, or exceeds the risks inherent in the employment relationship. *Miklosy*, 44 Cal. 4th at 902–03.

The non-time-barred conduct that potentially underlies Plaintiff's IIED and negligence claims are: (1) comments by El Hage and Abboud after her May 2014 rehire; and (2) her termination. The Court concludes that any common law claims based on either are barred by worker's compensation exclusivity. First, termination from employment is unquestionably conduct that is part of the normal employment relationship. *See Cole*, 43 Cal. 3d at 160. Second, the comments by Abboud—i.e., expressing to El Hage his dislike for Plaintiff and his opinion that she should obtain another job—falls under the category of "criticisms of work practice," and thus is similarly not actionable. *Id.* Finally, the claim based on the comment by El Hage concerning Plaintiff's chances of promotion is similarly preempted. *Id.* This is so even if those comments reflected an impermissible gender bias. *Id.* (claims based on "misconduct attributed to the employer [concerning] . . . promotions" are preempted). Thus, Plaintiff's IIED and negligence claims are barred by worker's compensation exclusivity to the extent they are not time-barred.[11]

///
///
///

---

[11] As an alternate basis for summary judgment on Plaintiff's IIED claim, the Court concludes that the non-time-barred conduct is not extreme and outrageous as a matter of law.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Wells Fargo's Motion. (ECF No. 19.)

**IT IS SO ORDERED.**

June 23, 2017

_____
OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE